IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., ATI TECHNOLOGIES ULC, and ATI INTERNATIONAL SRL, <br><br> Plaintiffs, <br><br> v. <br><br> S3 GRAPHICS CO., LTD., S3 GRAPHICS, INC., and SONICBLUE INCORPORATED, <br><br> Defendants. | Civil Action No. _____ <br><br> **Demand for Jury Trial** |

**ADVANCED MICRO DEVICES, INC., ATI TECHNOLOGIES
ULC, AND ATI INTERNAIONAL SRL'S ORIGINAL COMPLAINT**

Plaintiffs Advanced Micro Devices, Inc. ("AMD"), ATI Technologies ULC, and ATI International SRL (collectively "ATI") (all three collectively "Plaintiffs") bring this action against Defendants S3 Graphics Co., Ltd. ("S3G Cayman"), S3 Graphics, Inc. ("S3G Delaware") (collectively, "S3G"), and SONICblue Incorporated ("SONICblue") (all three collectively, "Defendants"). Plaintiffs allege for their Complaint as follows:

## NATURE OF THE ACTION

1. This is an action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaratory judgment of ownership and non-infringement of patents conveyed to Plaintiff ATI on March 30, 2001 when SONICblue sold to ATI its entire "FireGL Business" (the "ATI Patents").

2. S3G has accused Plaintiffs' customer of infringing certain of the ATI Patents in a proceeding currently pending before the United States International Trade

Commission ("ITC"), captioned *In the Matter of Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, INV. No. 337-TA-724 ("ITC Action"). S3G has asserted the following ATI patents in the ITC investigation: United States Patent Nos. 6,658,146 ("the '146 Patent") (attached as Exhibit 1), 6,683,978 ("the '978 Patent") (attached as Exhibit 2), 6,775,417 ("the '417 Patent") (attached as Exhibit 3), and 7,043,087 ("the '087 Patent") (attached as Exhibit 4).

3. Plaintiffs seek a declaratory judgment that ATI owns the ATI Patents including, without limitation, the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent under the Patent Laws of the United States, 35 U.S.C. §§ 101, et seq.

4. Because ATI owns the ATI Patents, Plaintiffs also seek a declaratory judgment that the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent are not infringed under the Patent Laws of the United States, 35 U.S.C. §§ 101, et seq.

5. Plaintiffs further seek temporary and preliminary injunctive relief to preserve the status quo and prevent S3G from continuing its efforts to enforce the ATI Patents against Plaintiffs' customers while patent ownership is determined in this proceeding.

## THE PARTIES

6. Plaintiff Advanced Micro Devices, Inc. is a Delaware corporation with a principal place of business at One AMD Place, Sunnyvale, California, 94088. AMD is in the global semiconductor business.

7. Plaintiff ATI International SRL is a Barbados corporation with an address of 3 Lascelles, Holetown, St. James, Barbados. ATI International SRL is a subsidiary of ATI Technologies ULC.[1]

---

[1] Gesellschaft fur Immobilieninvestitionen mbH and ATI Technologies (Europe) Limited are listed on certain documents relevant to this Complaint. These entities were direct and/or

2

8. Plaintiff ATI Technologies ULC (formerly named ATI Technologies, Inc.) is a Canadian corporation with an address of 1 Commerce Valley Dr., Thornhill, Ontario, Canada. ATI Technologies ULC is an indirect wholly owned-subsidiary of AMD.

9. Upon information and belief, Defendant S3 Graphics Co., Ltd. is a Cayman Islands corporation with its principal place of business at 2nd Floor, Zephyr House, Mary Street, P.O. Box 709, Grand Cayman, Grand Cayman Islands, British West Indies.

10. Upon information and belief, Defendant S3 Graphics, Inc. is a Delaware corporation with its principal place of business at 1025 Mission Court, Fremont, California, 94539. Upon information and belief, S3 Graphics, Inc. is a wholly-owned subsidiary of S3 Graphics Co., Ltd.

11. Upon information and belief, Defendant SONICblue Incorporated is a Delaware corporation with its principal place of business at 2841 Mission College Blvd., Santa Clara, California, 95054.

## JURISDICTION AND VENUE

12. Plaintiffs bring this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaratory judgment of ownership and non-infringement of the ATI Patents under the Patent Laws of the United States, 35 U.S.C. §§ 101 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has personal jurisdiction over S3G Delaware because, among other things, S3G Delaware is a Delaware corporation. By virtue of its incorporation under Delaware law, S3G Delaware has submitted itself to personal jurisdiction in the courts of Delaware.

---

indirect subsidiaries of ATI and no longer exist.

14. This Court has personal jurisdiction over S3G Cayman because, among other things, S3G Cayman has purposefully availed itself of the benefits of the State of Delaware by filing suit to enforce its patents in the District of Delaware.

15. This Court also has personal jurisdiction over S3G Cayman because S3G Cayman has constitutionally sufficient contacts with Delaware to make personal jurisdiction proper in this Court. S3G Cayman has offered products to residents of Delaware and conducts business in the District of Delaware.

16. This Court also has personal jurisdiction over S3G Cayman because S3G Delaware is an alter ego of S3G Cayman in that the subsidiary is the mere instrumentality of the parent and there is a unity of interest and ownership such that separate personalities of the two entities no longer exist. On information and belief, S3G Cayman dominates and controls the activities of S3G Delaware, and the two entities do not maintain separate, distinct businesses.

17. This Court has personal jurisdiction over SONICblue because, among other things, SONICblue is a Delaware corporation. By virtue of its incorporation under Delaware law, SONICblue has submitted itself to personal jurisdiction in the Courts of Delaware. SONICblue is included as a party because SONICblue owned the ATI Patents before they were conveyed to ATI, and S3G Cayman or S3G Delaware may consider SONICblue a party that should be or needs to be joined in this proceeding to finally resolve patent ownership and afford complete relief. Plaintiffs do not seek any specific affirmative claim or damages against SONICblue; and SONICblue has never contested ATI's ownership or that the patent rights were sold in 2001.

18. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and (d).

19. An actual controversy of such immediacy and reality as to warrant declaratory relief exists between Plaintiffs and Defendants as to the ownership and infringement of the ATI Patents, as discussed in more detail below.

## BACKGROUND

### The Ongoing ITC Investigation and S3G's Assertions that Apple Computers Containing Plaintiffs' Products Infringe.

20. On May 28, 2010, S3G filed a complaint at the ITC ("ITC Complaint"). S3G's ITC Complaint named Apple, Inc. ("Apple") as a respondent. The complaint alleges that Apple computers infringe certain of the ATI Patents, namely the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent.

21. On June 24, 2010, the ITC instituted the ITC Action. The ITC Action identifies S3G as the Complainant, or alleged patent owner, and Apple as the Respondent, or alleged infringer. Neither AMD nor ATI were named as a party in the ITC Action.

22. S3G's ITC Complaint alleges that S3G Cayman "owns by assignment the entire right, title and interest in and to" the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent.

23. During the ITC Action, S3G repeatedly represented to Plaintiffs that its Graphics Processing Units ("GPUs") made by Plaintiffs and used in Apple's computers were not the focus of the ITC Action. Instead, S3G affirmed that the ITC Action centered on GPUs supplied by NVIDIA and on software developed by Apple.

24. But far into the Investigation and just before the ITC conducted an evidentiary hearing in March 2011, S3G changed positions and alleged that Apple computers containing AMD/ATI GPUs infringed the asserted patents. S3G alleged that computers containing Plaintiffs' AMD/ATI GPUs infringed these patents because those products supported

S3TC texture compression and/or decompression. S3G did not seek discovery from Plaintiffs on how the AMD/ATI GPUs operate, so it could not establish infringement by presenting evidence on how those GPUs operate. Instead, S3G sought to establish infringement by the Apple computers containing AMD/ATI GPUs as a sanction imposed on Apple for allegedly violating an ITC discovery order by not timely producing a copy of AMD's proprietary driver source code software.

25. The Administrative Law Judge ("ALJ") in the ITC Action issued an Initial Determination on July 1, 2011. That determination was confidential and unavailable to the public, including Plaintiffs. The ITC issued a public version of that Initial Determination on August 2, 2011.

26. The Initial Determination sanctioned Apple for its discovery misconduct by drawing adverse inferences, but still found that there was insufficient evidence to establish that Apple products incorporating AMD/ATI GPUs infringe any of the patents that S3G asserted. The AMD driver source code that Apple did not timely produce does not provide enough information about how the AMD/ATI GPUs operate to carry S3G's burden to prove the infringement allegations it has made in its ITC Complaint.

27. On September 2, 2011, the ITC issued a Notice of Intent to Review ("Notice") the ALJ's Initial Determination ("ID") "in its entirety." The ITC's Notice necessarily includes the ALJ's finding that there was insufficient evidence to establish that Apple products incorporating AMD/ATI GPUs infringe any of the patents that S3G asserted. As a result of that Notice, the possibility exists that the ITC could issue an order preventing importation and sale of Apple computers incorporating AMD/ATI GPUs.

RLF1 5466846v. 1

28. On August 26, 2011, AMD filed a request for leave to file a written submission related to remedy and the public interest with the ITC. In that submission, AMD points out that (i) the ALJ correctly determined that there was insufficient evidence to establish that Apple computers containing AMD/ATI GPUs infringe the patents asserted by S3G, (ii) the ALJ correctly rejected S3G's attempt to establish infringement based on Apple's alleged discovery misconduct, and (iii) a remedial order based on a finding or presumption that Apple computers incorporating AMD/ATI GPUs infringe would be contrary to the public interest because it would not comport with due process and would unjustly penalize AMD, a non-party who did not engage in any misconduct.

29. On September 15, 2011, Plaintiffs filed a motion to intervene in the ITC Action for the narrow purpose of requesting termination of that action. Plaintiffs filed this motion because ATI not S3G, owns the patents that S3G has asserted. Because ATI owns the patents and declines to participate as a complainant in the ITC Action, the ITC lacks subject matter jurisdiction and the ITC Action must be terminated. Plaintiffs submitted a reply brief on that motion on October 6, 2011.

30. The ITC has not decided AMD/ATI's motion and the target date for a final decision by the ITC is November 1, 2011. Unless this court enters immediate injunctive relief, the ITC could issue a decision that prevents the importation and sale of Apple computers that contain AMD/ATI GPUs without any determination of ATI's ownership interest, and the parties will be forced to adjudicate issues related to patent ownership in this court and the ITC Action.

### ATI Owns The ATI Patents.

31. ATI is the owner of the ATI Patents.

32. SONICblue, the prior owner of the ATI Patents, transferred them to ATI on March 30, 2001 when it sold to ATI its entire "FireGL Business."

33. When SONICblue sold its FireGL Business to ATI, it executed an Asset Purchase Agreement and a Bill of Sale and Assignment.

34. The terms of the Asset Purchase Agreement and Bill of Sale and Assignment include a broad transfer of assets and property that includes all of the ATI Patents.

35. The terms of the Asset Purchase Agreement and Bill of Sale and Assignment essentially convey and deliver to ATI all "Acquired Assets" except for specifically identified "Excluded Assets."

36. The ATI Patents are not specifically identified as Excluded Assets.

37. The ATI Patents are "Acquired Assets" under the terms of the Agreements. The ATI Patents are (i) assets, properties, goodwill or business owned by [SONICblue] or its Subsidiaries; (ii) assets, properties, goodwill or business used in or held for use in the FireGL Business; and/or (iii) assets, rights and claims of every kind and nature used or intended to be used or held for use in the operation of the FireGL Business.

38. For example, the '146 Patent and '978 Patents are Acquired Assets because the patent applications for each of these patents were personal property of SONICblue on March 30, 2001.

39. Similarly, the '417 Patent and the '087 Patent are Acquired Assets because each of these patents stems from a patent application related to the acquired '146 Patent application. The '417 Patent is a continuation-in-part of the '146 Patent application, and the '087 Patent is a continuation of the '417 Patent.

40. The ATI Patents, including the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent, were used or intended to be used or held for use in the FireGL Business or its operation. In the ITC Investigation, S3G has alleged that Apple computers that contain AMD/ATI GPUs that support S3TC texture compression or decompression practice certain ATI Patents. The products that ATI acquired when SONICblue sold the FireGL Business also support S3TC texture compression or decompression. The ATI Patents are used in, held for use in, or intended for use in the FireGL Business or its operation because products that ATI acquired with the FireGL Business practice these patents.

41. ATI and SONICblue recently executed an acknowledgement that the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent were assigned to ATI on March 30, 2001. SONICblue authorized ATI to execute this acknowledgement on its behalf pursuant to a broad and irrevocable power of attorney given to ATI in the Assignment, and ATI executed this acknowledgement on behalf of SONICblue pursuant to this authority. Specifically, SONICblue authorized ATI, as well as its respective successors and assigns, "to take any and all reasonable action designed to vest more fully in ATI and the Purchasers the Acquired Assets hereby sold and assigned to ATI and the Purchasers or intended so to be and in order to provide for ATI and the Purchasers the benefit, use, enjoyment and possession of such Acquired Assets." Exhibit 5 at § 2.

42. This acknowledgment was recorded in the United States Patent and Trademark Office on September 13, 2011. Exhibits 6 and 7.

### S3G Cannot Divest ATI's Ownership of the ATI Patents.

43. In January 2001, SONICblue formed a joint venture with VIA Technologies, Inc. ("VIA") called S3 Graphics Co., Ltd. ("S3G Cayman"). This entity is

9

attempting to enforce the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent against Apple computers containing AMD/ATI GPUs in the ITC Investigation.

44. Before forming this joint venture, SONICblue and VIA executed an Amended and Restated Investment Agreement ("ARIA") in August 2000.

45. The ARIA expressly states that the "Graphic Chip Business" S3GC will operate does not include SONICblue's FireGL graphics business:

> "Graphics Chip Business" shall mean S3's current business which involves the development, design, and manufacture of discrete graphics chips or discrete graphics chips integrated with core logic. *__Notwithstanding anything to the contrary herein, the Graphics Chip Business shall not include…S3's professional graphics business (e.g., the FireGL graphics board product line) which S3 conducts through its professional graphics divisions.__*

46. The ARIA attached schedules, including a schedule of intellectual property that was to be contributed to S3GC.

47. The ARIA did not transfer any property or assets to S3G because S3G had not yet been formed.

48. In January 2001, SONICblue and VIA executed a Joint Venture Agreement ("JVA") that created the S3GC joint venture.

49. The JVA did not transfer any assets or even refer to the ARIA schedules.

50. S3G recorded on May 7, 2002 an assignment from SONICblue in 2001 that did not include the ATI Patents (the "May 2002 Documents").

51. The May 2002 Documents expressly identify an assignment of patents listed in "the attached Schedule A." None of the ATI Patents, or even the pending patent applications that issued as ATI Patents, is listed in the attached Schedule A.

52. The May 2002 Documents are not recorded in the PTO assignment records for any of the ATI Patents.

53. SONICblue did not include the ATI Patents, including the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent, in the assets transferred to the S3G joint venture in 2001, because these patents were part of the FireGL Business.

54. That the ATI Patents were not assigned to S3G before they were transferred to ATI in March 2001 is further confirmed by S3G's later attempt to obtain an assignment of the ATI Patents in November 2006. In 2006, S3G obtained a purported "assignment" of the ATI Patents from SONICblue. This "assignment" states that it is "effective November 14, 2006." Just two months ago, on July 15, 2011, S3GC recorded this "assignment" with the PTO. S3G would have had no need to seek a November 2006 assignment of the ATI Patents if they had already been assigned to S3G years earlier.

55. ATI's ownership of the ATI Patents is not affected even if S3G received rights in these patents before March 30, 2001. ATI received any rights that S3G may have had in the ATI Patents because S3G was a Subsidiary of SONICblue on March 30, 2001 under the terms of the Purchase Agreement.

56. Any assignment of the ATI Patents that S3G received before ATI acquired the patents on March 30, 2001 is void under 35 U.S.C. §261. All three requirements of § 261 are met.

57. One, ATI is a "subsequent purchaser ... for a valuable consideration" because it paid a substantial sum of money for SONICblue's FireGL Business, including the ATI Patents.

58. Two, ATI is a purchaser "without notice" of any prior assignment to S3G. Several representations and warranties that SONICblue made would be false if the ATI Patents were not assigned. ATI plainly had no notice that these representations were false, and that ATI

RLF1 5466846v. 1

did not have the patent rights it needed to operate the FireGL Business because the patents had been previously assigned to S3G.

59. Three, S3G admits that it did not record any assignment from SONICblue until May 2002, well after SONICblue's assignment to ATI and more than three months after any prior assignment to S3G in January 2001.

60. An actual controversy exists between Defendants and Plaintiffs as to the ownership and infringement of the ATI Patents, including in particular the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent.

61. S3G has claimed ownership of the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent in its ITC Complaint, as noted above, and is presently attempting to enforce those patents against Plaintiffs' customer, including allegations that Apple computers containing AMD/ATI GPUs infringe. Plaintiffs dispute S3G's ownership because ATI owns the ATI Patents, and in particular the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent. Plaintiffs' ownership claims create a real and immediate controversy between Plaintiffs and Defendants.

62. S3G has also asserted infringement by Apple computers containing AMD/ATI GPUs in the ongoing ITC Investigation. Plaintiffs dispute infringement of the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent, because ATI owns the ATI Patents. Plaintiffs' infringement claims create a real and immediate controversy between the Plaintiffs and Defendants.

63. These controversies are of such immediacy and reality as to warrant declaratory relief so that the parties may ascertain their rights and duties with respect to the ATI Patents.

## COUNT I
## DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE ATI PATENTS

64. Plaintiffs reallege and incorporate by reference paragraphs 1–64 above.

65. S3G has alleged, and continues to allege, in the ITC Action that Apple computers containing certain of Plaintiffs' products infringe certain of the ATI Patents, including the '146 Patent, the '978 Patent, the '417 Patent, and the '087 Patent.

66. Apple computers containing AMD/ATI GPUs have not infringed and are not now infringing directly or indirectly, and have not induced or contributed to and are not now inducing or contributing to the infringement of any claim of the ATI Patents, either literally or by application of the doctrine of equivalents.

67. In particular, Apple computers containing AMD/ATI GPUs have not infringed because the patent law requires that any practice of the claimed invention in a patent be "without authority" of the patent owner. The practice of any inventions claimed in the ATI Patents by Apple computers containing AMD/ATI GPUs is with authority of the patent owner ATI, who owns the ATI Patents.

68. Plaintiffs seek a declaratory judgment from the Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Apple computers containing AMD/ATI GPUs are not infringing and have not infringed any of the ATI Patents and granting all declaratory relief to which Plaintiffs are entitled.

## COUNT II
## DECLARATORY JUDGMENT OF
## OWNERSHIP OF THE ATI PATENTS

69. Plaintiffs reallege and incorporate by reference paragraphs 1–68 above.

70. Under the Patent Laws of the United States, 35 U.S.C. §§ 101 et seq. and principles governing rights established in connection with patent assignments, Plaintiffs possess superior rights in the ATI Patents over Defendants.

71. Plaintiffs seek a declaratory judgment from the Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring Plaintiffs' rights in the ATI Patents.

72. In particular, Plaintiffs seeks a declaration that: (i) the ATI Patents were transferred to ATI when ATI acquired the FireGL Business; (ii) ATI possesses ownership rights in the ATI Patents; and (iii) Defendants do not have any ownership rights in the ATI Patents that are superior to ATI's ownership rights.

73. Unless Plaintiffs obtain from this Court a declaratory judgment of their ownership of all rights, title and interest in and to the ATI Patents, they face significant harm as Defendants may continue to enforce the ATI Patents against Plaintiffs' customers, and Defendants' claim of ownership of the ATI Patents prevents Plaintiffs from using or licensing the inventions disclosed therein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

74. A declaratory judgment that Plaintiff ATI possesses ownership rights in the ATI Patents, up to and including ownership of all right, title and interest in one or more of the ATI Patents;

75. A declaratory judgment that Apple computers containing AMD/ATI products have not infringed, and are not infringing, directly, contributorily, and/or by inducement literally and/or under the doctrine of equivalents any of the ATI Patents in which ATI possesses ownership rights;

76. A declaratory judgment that S3G Cayman and S3G Delaware possess no ownership rights in the ATI Patents;

77. A temporary restraining order, preliminary injunction, and permanent injunction against S3G Cayman and S3G Delaware, their officers, employees, agents, subsidiaries, affiliates, assigns, successors, and any person acting for or on their behalf, in active concert or participation with them or who receives actual notice of this Court's order, enjoining and restraining each of them from pursuing or participating in the ITC Investigation;

78. A temporary restraining order, preliminary injunction, and permanent injunction against S3G Cayman and S3G Delaware, their officers, employees, agents, subsidiaries, affiliates, assigns, successors, and any person acting for or on their behalf, in active concert or participation with them or who receives actual notice of this Court's order, ordering each of them to take all necessary actions to secure dismissal of claims of patent infringement asserted in the ITC Investigation, including but not limited to moving to withdraw S3G's ITC Complaint and moving to terminate the ITC Investigation;

79. A temporary restraining order, preliminary injunction, and permanent injunction against S3G Cayman and S3G Delaware, their officers, employees, agents, subsidiaries, affiliates, assigns, successors, and any person acting for or on their behalf, in active concert or participation with them or who receives actual notice of this Court's order, enjoining and restraining each of them from filing suit for infringement of the ATI Patents or otherwise

enforcing or attempting to enforce the ATI Patents against any party in any forum or jurisdiction, foreign or domestic;

80. A temporary restraining order, preliminary injunction, and permanent injunction against S3G Cayman and S3G Delaware, their officers, employees, agents, subsidiaries, affiliates, assigns, successors, and any person acting for or on their behalf, in active concert or participation with them or who receives actual notice of this Court's order, enjoining and restraining each of them from taking any action adversely affecting the scope or validity of any claimed invention in the ATI Patents, including but not limited to seeking reexamination, reissuance, limiting, abandoning, failing to respond to any rejection and/or disclaiming any claim of the ATI Patents.

81. A temporary restraining order, preliminary injunction, and permanent injunction against S3G Cayman and S3G Delaware, their officers, employees, agents, subsidiaries, affiliates, assigns, successors, and any person acting for or on their behalf, in active concert or participation with them or who receives actual notice of this Court's order, enjoining and restraining each of them from negotiating or entering into any licensing transactions with respect to the ATI Patents;

82. A temporary restraining order, preliminary injunction, and permanent injunction against S3G Cayman and S3G Delaware, their officers, employees, agents, subsidiaries, affiliates, assigns, successors, and any person acting for or on their behalf, in active concert or participation with them or who receives actual notice of this Court's order, enjoining each of them from transferring, assigning, selling, conveying or in any other way disposing of the ATI Patents;

83. An order imposing a constructive trust over the ATI Patents for and on behalf of Plaintiff ATI and requiring S3G Cayman and S3G Delaware to assign and convey any and all right, title, and interest they may claim in the ATI Patents to Plaintiff ATI;

84. A declaration that this case is exceptional and an award of Plaintiff's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

85. An award to Plaintiffs of their costs and expenses in this action;

86. Such further necessary or proper relief pursuant to 28 U.S.C. § 2202; and

87. Such further and additional relief as this Court deems just and proper.

*/s/ Anne Shea Gaza*
Robert W. Whetzel (#2288)
whetzel@rlf.com
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

*Attorneys for Plaintiffs*
*Advanced Micro Devices, Inc., ATI*
*Technologies ULC and ATI International SRL*

OF COUNSEL:

Jeffrey D. Mills
jmills@kslaw.com
R. William Beard, Jr.
wbeard@kslaw.com
Danielle Fitzpatrick
dfitzpatrick@kslaw.com
Amina S. Dammann
adammann@kslaw.com
Anna Brandl
abrandl@kslaw.com
King & Spalding LLP
401 Congress Avenue, Suite 3200
Austin, TX 78701
(512) 457-2000

Dated: October 13, 2011