# YOUNG CONAWAY STARGATT & TAYLOR, LLP

KAREN L. PASCALE
DIRECT DIAL:  302-571-5001
DIRECT FAX:    302-576-3516
kpascale@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE  19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

October 17, 2011

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

**BY CM/ECF AND HAND DELIVERY**

REDACTED-PUBLIC VERSION

Re:     *Advanced Micro Devices, et al. v. S3 Graphics, et al.,* C.A. No. 11-965-UNA

Dear Judge Stark:

    I write on behalf of S3 Graphics, Inc. and S3 Graphics Co. Ltd. (collectively, "S3G") in response to Your Honor's request for the parties' proposals for how this case should proceed. *See* D.I. 20 (Oral Order of 10/14/2011).   As set forth herein, the motion of plaintiffs Advanced Micro Devices and ATI Technologies (collectively, "AMD/ATI") for temporary and preliminary injunctive relief is without merit, and the case should go forward on a standard pretrial track.

    1.    **S3G Has Owned By Assignment All Right, Title, and Interest in the Four Patents-In-Issue Since January 3, 2001**

    On January 3, 2001, SONICblue Inc. transferred to a joint venture (later, S3 Graphics Co., Ltd.) all right, title, and interest in the patent applications that later issued as the four patents-in-issue. Specifically, Schedule 3.14(a)(ii) expressly identified and assigned the patent applications transferred to S3G. Since the issuance of the first of these patents (the '146 patent) on December 2, 2003, each of the four patents has, on its face, expressly identified "S3 Graphics Co., Ltd." as the "Assignee." S3G alone has prosecuted and paid all maintenance fees on the four patents. And over the past decade, S3G has granted and publicly disclosed licenses to Sony, Nintendo, Creative Technology, and Microsoft—all without a whisper of ownership from AMD/ATI. Indeed, throughout the industry, the patented technology is commonly referred to as "S3TC," and the patents are often referred to as "the S3 texture compression" patents.

    2.    **AMD/ATI Has No Legitimate Claim to Any Rights in the Four Patents and Has Intentionally Delayed Its Claim of Ownership**

    On May 28, 2010, S3G sued Apple for patent infringement in the U.S. International Trade Commission ("ITC") on the four patents. AMD/ATI said nothing about its now-asserted ownership rights. On July 1, 2010, the ITC published a Notice of Investigation against Apple. AMD/ATI again said nothing about ownership. On October 18, 2010, Apple issued a subpoena to AMD in the ITC action expressly identifying S3G's four patents, and on October 28, 2010, AMD's outside counsel participated in the deposition of an inventor who was by then employed by AMD. But AMD/ATI said nothing about ownership. In February 2011, S3G learned from public sources that AMD had become a major Apple microchip supplier. S3G then demanded discovery relating to AMD components used in Apple products, but was rebuffed—which eventually led to the ITC issuing discovery sanctions against Apple. Again, however, AMD/ATI said nothing about ownership of the patents, and it did not seek to intervene in the ITC trial.

    Indeed, AMD/ATI remained silent about ownership of the four patents until September 15, 2011, two weeks after the ITC determined to review the ALJ's Final Initial Determination

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
October 17, 2011
Page 2

holding Apple in violation of 19 U.S.C. § 1337. Then, and *only* then, did AMD (1) ▮▮▮▮▮ and file in the U.S. Patent and Trademark Office a purported "Assignment" of the four patents to ATI, and (2) belatedly move both to intervene in "Public Interest" briefing before the full Commission and to terminate the ITC Investigation (which motions remain pending).

    3.    **AMD/ATI Has Failed to Show Entitlement to Temporary or Preliminary Injunctive Relief Under Delaware Law**

AMD/ATI has failed to show immediate and irreparable injury under this Court's four-factor test for the issuance of either a TRO or a preliminary injunction. Accordingly, this Court should set an orderly schedule for discovery, briefing, and a hearing, so that the parties' dispute can be resolved on a full record.

Here, the most relevant facts counseling against granting AMD/ATI any relief include: (1) the express written assignment, by SONICblue to S3G, of the patent applications that later issued as the four patents-in-issue; (2) ▮▮▮▮▮▮▮▮▮▮ (3) AMD's extraordinary delay in raising its purported ownership of the four patents (and the fact that S3G has not sued AMD/ATI for patent infringement), negating its alleged irreparable "harm"; and (4) the immediate harm to S3G's licensing and enforcement efforts that would be caused by granting relief.

This Court has made it clear that "[a] temporary restraining order, like a preliminary injunction, is an extraordinary remedy." *Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 2011 WL 1980610 (D. Del. 2011). Accordingly, to prevail on a motion for a TRO or preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). Further, the "[f]ailure to establish any element in [the moving party's] favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). As the following discussion indicates, however, AMD/ATI has not made this showing in the present case, and its request for injunctive relief should be denied.

    (1) *AMD/ATI has not shown a likelihood of success on the merits*. Schedule 3.14(a) to the January 3, 2001 joint venture agreement expressly assigns to S3G all right, title, and interest in the applications that later issued as the four patents-in-issue. Each of the patents, in turn, expressly identifies "S3 Graphics Co. Ltd." on its face as the "Assignee"—and hence the patent's presumptive owner—shifting the burden of proof to the party challenging ownership. *See, e.g., Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1578 n.2 (Fed. Cir. 1991); *LG Display Co. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 451 n.5 (D. Del. 2010). Moreover, as the owner of the four patents, S3G prosecuted the patent applications that matured into the patents, S3G has paid all maintenance fees on the patents, and S3G is currently defending the reexamination proceedings involving the patents that were filed by AMD/ATI's customer Apple.

In contrast, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
The Honorable Leonard P. Stark
October 17, 2011
Page 3                                                                                           **FILED UNDER SEAL**

████████████████████████████████████████████

  (2) *AMD/ATI has not shown a risk of irreparable harm.* AMD/ATI's delay in asserting ownership negates its claim to irreparable harm. S3G has prosecuted, maintained, licensed, litigated, and defended the four patents for more than a decade without a word from AMD. Indeed, neither AMD nor ATI is a named party in the current ITC proceedings against Apple.

  Yet, such contingent monetary loss is not "irreparable": "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1973) (citation omitted).

  Additionally, if the ITC decides to issue an exclusion order, Apple can continue to import and sell its infringing products under bond for 60 more days under 19 USC § 1337(j), thereby vitiating any claim of immediate harm. Indeed, even after this 60-day period expires, AMD/ATI can seek an advisory opinion from the ITC that its microchips are not within the scope of the exclusion order—or it can pursue similar relief from the U.S. Customs Service.

  (3) *The harm to S3G from a TRO or preliminary injunction would be immediate and irreparable.* The issuance of a TRO or preliminary injunction would compromise S3G's relationship with existing licensees such as Sony and Nintendo, ██████████████████ ████████████████ and also with Microsoft, with whom S3G has a close business relationship. Indeed, it would effectively end S3G's current licensing efforts. And even if an injunction were later dissolved, the damage to S3G's reputation and business would remain.

  (4) *The public interest would be disserved.* AMD/ATI is expressly seeking to preclude S3G's participation in the pending ITC Investigation, and (depending on how its proposed order is interpreted) it may also be seeking to prevent S3G from participating in the pending reexaminations filed by Apple in the PTO. But any interference with the lawful processes of a federal agency would, by definition, harm the public interest. Moreover, having moved in the ITC to intervene and terminate the investigation, it is in the public interest, and consistent with accepted principles of comity and exhaustion of administrative remedies, that the ITC be allowed to consider the issues before it and determine whether the accused Apple products should or should not be subject to an exclusion order.

  4.  To the Extent the Complaint States Triable Claims, AMD/ATI and S3G Should Engage in Discovery and the Customary Pretrial Process

  AMD/ATI has not shown its entitlement to relief, whether through a TRO or a preliminary injunction. Accordingly, this Court should deny AMD/ATI's motion and instead allow the case to go forward according to the Court's normal and customary pretrial procedures.

                  Respectfully submitted,

                  */s/ Karen L. Pascale*

cc: Counsel on Certificate of Service    Karen L. Pascale (No. 2903)

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on October 18, 2011, I caused to be electronically filed a true and correct copy of the foregoing sealed document with the Clerk of the Court using CM/ECF (which will send notification that such filing is available for viewing and downloading to all registered counsel), and in addition caused true and correct copies of the foregoing document to be served upon the following counsel of record in the manner indicated:

### EMAIL

Robert W. Whetzel
whetzel@rlf.com
Frederick L. Cottrell, III
cottrell@rlf.com
Anne Shea Gaza
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Jeffrey D. Mills
jmills@kslaw.com
R. William Beard, Jr.
wbeard@kslaw.com
Danielle Fitzpatrick
dfitzpatrick@kslaw.com
Amina S. Dammann
adammann@kslaw.com
Anna Brandl
abrandl@kslaw.com
King & Spalding LLP
401 Congress Avenue, Suite 3200
Austin, TX 78701

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

---

Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone:  302-571-6600
*Attorneys for Defendants S3 Graphics Co., Ltd. and S3 Graphics, Inc.*
