# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ADVANCED MICRO DEVICES, INC., ATI )
TECHNOLOGIES ULC, and ATI )
INTERNATIONAL SRL, )
                           )       Civil Action No. _____
         Plaintiffs, )
                           )       **Demand for Jury Trial**
     v. )
                           )       **REDACTED**
S3 GRAPHICS CO., LTD., S3 GRAPHICS, )       **PUBLIC VERSION**
INC., and SONICBLUE INCORPORATED, )
                           )
        Defendants. )

## ADVANCED MICRO DEVICES, INC., ATI TECHNOLOGIES ULC, AND ATI INTERNATIONAL SRL'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

OF COUNSEL:

Jeffrey D. Mills
jmills@kslaw.com
R. William Beard, Jr.
wbeard@kslaw.com
Danielle Fitzpatrick
dfitzpatrick@kslaw.com
Amina S. Dammann
adammann@kslaw.com
Anna Brandl
abrandl@kslaw.com
King & Spalding LLP
401 Congress Avenue, Suite 3200
Austin, TX 78701
(512) 457-2000

Dated: October 13, 2011

Robert W. Whetzel (#2288)
whetzel@rlf.com
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

*Attorneys for Plaintiffs*
*Advanced Micro Devices, Inc., ATI*
*Technologies ULC and ATI International SRL*

# TABLE OF CONTENTS

                                                                                    Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.      Statement of Nature and Stage of the Proceedings ......................................... 1

II.     Summary of Argument ..................................................................................... 2

III.    Factual Background ......................................................................................... 3

        A.      SONICBLUE FORMS S3GC AS A JOINT VENTURE AND EXCLUDES THE
                FIREGL BUSINESS FROM THE BUSINESS OPERATED BY S3GC .................. 4

        B.      ██████████ ██ ██ ████████████████ . ...................................... 4

        C.      ON MAY 7, 2002, S3GC RECORDS AN ASSIGNMENT FROM SONICBLUE
                THAT DOES NOT INCLUDE THE ATI PATENTS. ......................................... 5

        D.      S3G OBTAINS A PURPORTED ASSIGNMENT OF THE ATI PATENTS FROM
                SONICBLUE "EFFECTIVE" NOVEMBER 14, 2006. .................................... 5

        E.      S3G FILES AN ITC COMPLAINT ALLEGING THAT ████████████ ,
                APPLE, INC., INFRINGES THE ATI PATENTS. ........................................... 6

IV.     Argument .......................................................................................................... 7

        A.      AN INJUNCTION SHOULD BE ENTERED TO PREVENT S3G FROM ENFORCING
                THE ATI PATENTS BEFORE THE ITC WHILE PATENT OWNERSHIP IS
                ADJUDICATED IN THIS COURT. ............................................................. 7

        B.      AN INJUNCTION TO PRESERVE THE STATUS QUO PENDING ADJUDICATION
                OF PATENT OWNERSHIP IS ALSO APPROPRIATE UNDER THE TRADITIONAL
                FOUR FACTOR TEST. .......................................................................... 9

                1.      AMD/ATI WILL PREVAIL ON THE MERITS. .................................. 9

                        a.      ████████████████████████ ............... 10

                        b.      ██████████████████████ ...................... 11

                        c.      S3G HAS NO SUBSTANTIAL DEFENSE TO NEGATE ATI'S
                                OWNERSHIP. ................................................................ 14

2.      AMD/ATI WILL BE IRREPARABLY HARMED IF S3G IS NOT
        ENJOINED .............................................................................................. 17

3.      THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST CLEARLY
        FAVOR ENJOINING S3G. ......................................................................... 19

V.   Conclusion ....................................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

CASES

*Abbott Labs. v. Andrx Pharms., Inc.,*
  473 F.3d 1196 (Fed. Cir. 2007)..........................................................................................9

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,*
  42 F.3d 1421 (3d Cir. 1994)..............................................................................................20

*Arachnid, Inc. v. Merit Indus., Inc.,*
  939 F.2d 1574 (Fed. Cir. 1991).........................................................................................15

*Bauer & Cie v. O'Donnell,*
  229 U.S. 1 (1913)...............................................................................................................13

*Bio-Tech. Gen. Corp. v. Genentech, Inc.,*
  80 F.3d 1553 (Fed. Cir. 1996)......................................................................................7, 18

*Ciena Corp. v. Nortel Networks Inc.,*
  No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) .................................7, 19

*Concord Steel, Inc. v. Wilmington Steel Processing Co.,*
  No. 3369-VCP, 2008 WL 902406 (Del. Ch. Apr. 3, 2008)..........................................14, 15

*Continental Oil Co. v. Frontier Ref. Co,*
  338 F.2d 780 (10th Cir. 1964) ...........................................................................................20

*Cooper Distrib. Co. v. Amana Refrigeration, Inc.,*
  63 F.3d 262 (3d Cir. 1995)...........................................................................................14, 15

*EMD Crop Bioscience Inc. v. Becker Underwood, Inc.,*
  750 F. Supp. 2d 1004 (W.D. Wis. 2010) .......................................................................11, 12

*Filmtec Corp. v. Allied-Signal Inc.,*
  939 F.2d 1568 (Fed. Cir. 1991)..........................................................................................12

*Gen. Elec. Co. v. Wilkins,*
  No. 1:10-cv-00674-OWW-JLT, 2011 WL 1740420 (E.D. Cal. May 5, 2011) ......................18

*Gen. Protecht Group, Inc. v. Leviton Mfg. Co., Inc.,*
  651 F.3d 1355 (Fed. Cir. 2011)....................................................................................3, 9, 19

*i4i Ltd. P'ship v. Microsoft Corp.,*
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011) ....................................18

*In the Matter of Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, Inv. No. 337-TA-724 ........................................................1

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010)...................................................................20

*Isr. Bio-Engineering Project v. Amgen Inc.*,
475 F.3d 1256 (Fed. Cir. 2007)..............................................................20

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990).....................................................2, 3, 7, 8

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
903 A.2d 728 (Del. 2006) ......................................................................10

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
633 F. Supp. 2d 361 (E.D. Tex. 2009)....................................................18

*Microsoft Corp. v. i4i Ltd. P'ship*,
131 S. Ct. 2238 (2011) ............................................................................9

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005)..............................................................13

*Nw. Nat'l Ins. Co. v. Esmark, Inc.*,
672 A.2d 41 (Del. 1996) ........................................................................10

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
52 F.3d 1026 (Fed. Cir. 1995)..........................................................18, 20

*Phillips v. Hove*,
No. 3644-VCL, 2011 WL 4404034 (Del. Ch. Sept. 22, 2011)................11

*Polymer Techs., Inc. v. Bridwell*,
103 F.3d 970 (Fed. Cir. 1996)................................................................18

*Prima Tek II, LLC v. A-Roo Co.*,
222 F.3d 1372 (Fed. Cir. 2000)..............................................................20

*Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*,
590 F. Supp. 2d 663 (D. Del. 2008).......................................................15

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
237 F.3d 1359 (Fed. Cir. 2001)........................................................14, 18

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
427 F.3d 971 (Fed. Cir. 2005)................................................................20

*SiRF Tech., Inc. v. ITC,*
    601 F.3d 1319 (Fed. Cir. 2010).................................................................2, 7, 8

*Skycam, Inc. v. Bennett,*
    No. 09-CV-294-GKF-FHM, 2011 WL 3293015 (N.D. Okla. Aug. 1, 2011)........................15

*Synopsys, Inc. v. Magma Design Automation, Inc.,*
    No. C-04-3923-MMC, 2005 WL 3260684 (N.D. Cal. Dec. 1, 2005)................................18, 19

*Tandon Corp. v. ITC,*
    831 F.2d 1017 (Fed. Cir. 1987)........................................................................8

*Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Texas Sys.,*
    458 F.3d 1335 (Fed. Cir. 2006).....................................................................2, 8

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.,*
    90 F.3d 1558 (Fed. Cir. 1996)..........................................................................7

*Tex. Instruments, Inc. v. Tessera, Inc.,*
    231 F.3d 1325 (Fed. Cir. 2000).....................................................................3, 7

*Turner v. Officers, Dirs. & Emps. Of Mid Valley Bank,*
    712 F. Supp. 1489 (E.D. Wash. 1988)..............................................................11

*Ultra Prods., Inc. v. Best Buy Co.,*
    No. 09-1095 (MLC), 2009 WL 2843888 (D.N.J. Sept. 1, 2009).................................2, 8

*Univ. of Tennessee v. Elliott,*
    478 U.S. 788 (1986)..................................................................................20

*Urbain v. Knapp Bros. Mfg. Co.,*
    217 F.2d 810 (6th Cir. 1954)........................................................................20

*Venezia v. Union Cnty. Prosecutor's Office,*
    No. 10-6692 (MLC), 2011 WL 2148818 (D.N.J. May 31, 2011)...............................8, 9

*William Gluckin & Co. v. Int'l Playtex Corp.,*
    407 F.2d 177 (2d Cir. 1969)........................................................................8, 9

*Winter v. Natural Res. Defense Council, Inc.,*
    555 U.S. 7 (2008)....................................................................................17

*Young Engineers, Inc. v. ITC,*
    721 F.2d 1305 (Fed. Cir. 1983).......................................................................7

## STATUTES/RULES

19 U.S.C. § 1337.............................................................................................6

35 U.S.C. § 261 ................................................................................................12, 17

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009) ................................................................ 12, 18

Plaintiffs Advanced Micro Devices, Inc. ("AMD"), ATI Technologies ULC, and ATI International SRL (collectively "AMD/ATI") submit this brief in support of their motion to enjoin Defendants S3 Graphics Co., Ltd. and S3 Graphics, Inc. (collectively, "S3G") from continuing their efforts to enforce patents actually owned by ATI against AMD/ATI or its customers until this Court has resolved the disputed issue of patent ownership.

## I.   STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

AMD/ATI has filed a complaint seeking a declaratory judgment that ATI owns four patents, United States Patent Nos. 6,658,146 ("the '146 Patent"), 6,683,978 ("the '978 Patent"), 6,775,417 ("the '417 Patent"), and 7,043,087 ("the '087 Patent") (collectively the "ATI Patents"). Exs. 1–4.[1]  AMD/ATI also seeks a declaration that AMD/ATI does not infringe the ATI Patents because ATI owns them.

AMD/ATI seeks immediate injunctive relief to preserve the status quo while this Court determines ownership of the ATI Patents.  Immediate injunctive relief is necessary to prevent S3G from obtaining an order from the United States International Trade Commission ("ITC") that ██████████████████████████████████████████████████████████ ███████████████████████████████████████████ AMD/ATI's motion is urgent because S3G could obtain this relief any day without a determination of ATI's ownership interest.

S3G has asserted the ATI Patents against Apple computers containing AMD/ATI Graphics Processing Units ("GPUs") in an ongoing ITC Investigation ("ITC Action").[2]

████████████████████████████████

---

[1]  All exhibits referenced herein are attached to the Declaration of Amina Dammann, filed contemporaneously herewith.

[2]  *See In the Matter of Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, Inv. No. 337-TA-724.

████████████████████████████████████████████████████

Because of S3G's attempt to secure an order against AMD/ATI GPUs, AMD/ATI sought to intervene in the ITC Action on September 15, 2011.  S3G has sought to block AMD/ATI's intervention, claiming that only a United States District Court can decide patent ownership. Ex. 28, Doc. ID 460445, S3G Response at 26.  AMD/ATI's motion is briefed and pending before the ITC.  However, a final decision by the ITC is expected by November 1, 2011.  Ex. 25. Unless S3G is enjoined, the ITC may grant S3G's requested relief ████████████████

████████████████████████████████████████████████████

████████████████████████

## II.    SUMMARY OF ARGUMENT

1.    This Court should enjoin S3G from participating in the ITC Action to preserve the status quo, promote judicial economy, and prevent manifest injustice to AMD/ATI while this Court decides patent ownership.  Enjoining S3G will preserve the status quo ████████████

████████████████████████████████████████████████████

████████████████████████

2.    Under governing Federal Circuit law, S3G should be enjoined because this action to decide patent ownership will be dispositive of the ITC Action. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990); *Ultra Prods., Inc. v. Best Buy Co.*, No. 09-1095 (MLC), 2009 WL 2843888, at *5 (D.N.J. Sept. 1, 2009).  If this Court confirms that ATI owns the patents, the ITC Action cannot proceed. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1325–26 (Fed. Cir. 2010).

3.    S3G should also be enjoined under the "guiding principles" of efficiency and judicial economy. *See Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).  The ITC Action involves patent infringement allegations against ███████████████, Apple, and the rationale applied to enjoin earlier-filed customer

2

suits applies equally here.  *Katz*, 909 F.2d at 1463–64.  Enjoining S3G from proceeding in the ITC while this Court decides patent ownership is the only way to avoid potential duplication of effort, unnecessary expenditures, and inconsistent results on patent ownership.

4.       S3G should also be enjoined under the traditional four-part test for injunctive relief.  ATI clearly owns the ATI Patents.



5.       AMD/ATI will suffer irreparable harm unless S3G is enjoined.  AMD/ATI will suffer the irreparable loss of its rights to control the ATI Patents

6.       Because the ITC may issue a final decision any day, AMD/ATI respectfully requests that this Court specifically enjoin S3G to take all necessary actions to secure dismissal of the patent infringement claims asserted in the ITC Action, including filing a motion to withdraw its complaint pending this Court's decision on patent ownership. *Gen. Protecht Group, Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355 (Fed. Cir. 2011); *Tex. Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1332 (Fed. Cir. 2000).

## III.    FACTUAL BACKGROUND

The U.S. Patent and Trademark Office ("PTO") assignment records indicate that all four ATI Patents name the same inventors, and that these inventors assigned their rights to S3

Incorporated in February 1998. Exs. 5–8. S3 Incorporated assigned its rights to SONICblue in November 2000. *Id.* SONICblue entered into two business transactions in 2001 that resulted in the ATI Patents being conveyed to ATI.

### A.   SONICBLUE FORMS S3GC AS A JOINT VENTURE AND EXCLUDES THE FIREGL BUSINESS FROM THE BUSINESS OPERATED BY S3GC.

In January 2001, SONICblue and VIA Technologies, Inc. ("VIA") formed a joint venture called S3 Graphics Co., Ltd. ("S3GC"). Ex. 12. Before forming this joint venture, SONICblue and VIA executed an Amended and Restated Investment Agreement ("ARIA") in August 2000. Ex. 13. The ARIA expressly states that the "Graphic Chip Business" S3GC will operate does not include SONICblue's FireGL graphics business:

> "Graphics Chip Business" shall mean S3's current business which involves the development, design, and manufacture of discrete graphics chips or discrete graphics chips integrated with core logic. ***Notwithstanding anything to the contrary herein, the Graphics Chip Business shall not include…S3's professional graphics business (e.g., the FireGL graphics board product line) which S3 conducts through its professional graphics divisions.***

*Id.*, § 1 (emphasis added). The ARIA attached schedules, including a schedule of intellectual property that was to be contributed to S3GC. Ex. 22, ARIA Schedule 3.14(a)(ii). The ARIA did not transfer any property or assets to S3G because S3G had not yet been formed. In January 2001, SONICblue and VIA executed a Joint Venture Agreement ("JVA") that created the S3GC joint venture. Ex. 12. The JVA did not transfer any assets or even refer to the ARIA schedules.

**B.**



which is now a wholly-owned subsidiary of AMD. Exs. 9, 10. SONICblue executed an

---

³

4

█████████████████████████ and Bill of Sale and Assignment ("Assignment") that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████ █ █ █████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████ SONICblue authorized ATI to execute on its behalf an acknowledgement that

the ATI Patents had been transferred in March 2001 through a broad and irrevocable power of

attorney in the Assignment. Ex. 9, ¶ 2. On September 6, 2011, ATI executed that

acknowledgement on SONICblue's behalf and subsequently recorded it in the PTO. Exs. 11, 16.

C.     **ON MAY 7, 2002, S3GC RECORDS AN ASSIGNMENT FROM SONICBLUE THAT DOES NOT INCLUDE THE ATI PATENTS.**

████████████████████████████████████████████████████████████

██████ S3G recorded on May 7, 2002 an assignment from SONICblue that did not include the

ATI Patents (the "May 2002 Documents"). Ex. 15, Reel 012852 Frame 0016–34. The May

2002 Documents expressly identify an assignment of patents listed in "the attached Schedule A."

*Id.*, Frame 0016. None of the ATI Patents, or even the pending patent applications that issued as

ATI Patents, is listed in the attached Schedule A. *Id.*, Frame 0016–21. The May 2002

Documents are not recorded in the PTO assignment records for any of the ATI Patents. Exs. 5-8.

D.     **S3G OBTAINS A PURPORTED ASSIGNMENT OF THE ATI PATENTS FROM SONICBLUE "EFFECTIVE" NOVEMBER 14, 2006.**

In 2006, S3GC actually obtained a purported "assignment" of the ATI Patents from

SONICblue. Exs. 5–8. This "assignment" states that it is "effective November 14, 2006."

---

4     ████████████████████████████████████████████████████

Ex. 6, Reel 026598 Frame 0180.  Just two months ago, on July 15, 2011, S3GC recorded this "assignment" with the PTO.  Exs. 5–8.  SONICblue, however, had nothing to assign to S3GC in 2006 because it had already assigned the ATI Patents to ATI ███████████████  In the ITC Action, S3G claims that it received an assignment of the patents in 2001 and does not claim that it owns the ATI Patents based on the 2006 assignment.  Ex. 28, S3G Response at 17.

### E.   S3G FILES AN ITC COMPLAINT ALLEGING THAT ███████████████ APPLE, INC., INFRINGES THE ATI PATENTS.

In 2010, S3G filed a Complaint with the ITC alleging that AMD/ATI's customer, Apple, infringed the ATI Patents.  Ex. 14.  S3G's Complaint did not name AMD or ATI as a party.  *Id.* S3G claimed ownership of the patents based solely on the May 2002 Documents that do not include an assignment of the ATI Patents.  *Id.*, at p. 6 ¶ 25, p. 8 ¶ 33, p. 11 ¶ 44, p. 12 ¶ 52.

The ITC instituted an investigation on June 24, 2010.  During the investigation, ███ ████████████████████████████████████████ ██████████ ██ ██████████████████████████████ ████████████████████████████  On August 2, 2011, a public version of the Administrative Law Judge's ("ALJ") Initial Determination ("ID") issued. *See* http://www.usitc.gov, Doc. ID 455892.  The ALJ found Apple in violation of 19 U.S.C. § 1337 because its computers infringed two ATI Patents.  Ex. 19, ID Excerpts.  The ALJ recommended relief that would prevent Apple from importing or selling computers "that do not contain an NVIDIA GPU."  *Id.*, ID at 282.  The ITC has decided to review the ID "in its entirety" and a final decision is expected any day before the target date of November 1, 2011. Ex. 20, 76 FR 55944.  AMD/ATI seeks to enjoin S3G from continuing the ITC Action while patent ownership is decided by this Court.

## IV.   ARGUMENT

### A.   AN INJUNCTION SHOULD BE ENTERED TO PREVENT S3G FROM ENFORCING THE ATI PATENTS WHILE PATENT OWNERSHIP IS ADJUDICATED IN THIS COURT.

Federal Circuit law governs whether to enjoin concurrent patent litigation, including ITC actions. *Tessera*, 231 F.3d at 1328; *Ciena Corp. v. Nortel Networks Inc.*, No. 2:05 CV 14, 2005 WL 1189881, at *9 (E.D. Tex. May 19, 2005) (enjoining participation in ITC action). Under Federal Circuit law, the traditional four part test for injunctive relief does not apply to the question whether to enjoin concurrent litigation involving an action for patent infringement and an action between two entities who claim ownership of the asserted patents:

> [W]e agree with the district court that this standard, which was developed to test the grant of the requested remedy before the case has been tried on the merits, does not apply to the different question of whether to enjoin the prosecution of concurrent litigation. In the latter case it is not controlling whether the plaintiff is likely to succeed on the merits.

*Katz*, 909 F.2d at 1463 (declining to apply four factor test to enjoin action between two alleged owners, Katz and ASP, based on patent infringement action brought by Katz). "Instead, a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Id.*

Here, S3G should be enjoined because the disposition of this case would be dispositive of the ITC proceeding. The dispute before this Court centers on who owns the patents, ATI or S3G. This Court's decision on ownership will bind the parties and the ITC. *Bio-Tech. Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1564 n.9 (Fed. Cir. 1996); *Young Engineers, Inc. v. ITC*, 721 F.2d 1305, 1316 (Fed. Cir. 1983). If this Court rules that ATI owns the patents, the ITC Action cannot proceed. *See SiRF Tech., Inc.*, 601 F.3d at 1325–26. By contrast, the ITC cannot finally resolve patent ownership because its findings do not have *res judicata* or preclusive effect. *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996); *Bio-*

*Tech. Gen. Corp.,* 80 F.3d at 1564; *Tandon Corp. v. ITC*, 831 F.2d 1017, 1019 (Fed. Cir. 1987). S3G has even sought to prevent AMD/ATI from intervening in the ITC Action by asserting that only a United States District Court can decide patent ownership. Ex. 28, Doc. ID 460445, S3G Response at 26. Because resolution of patent ownership could have a dispositive effect on the ITC Action, S3G should be enjoined. *Katz,* 909 F.2d at 1464; *Ultra Prods., Inc.,* 2009 WL 2843888, at *5 (staying action where resolution of issues "could have a major and even dispositive effect on the action").

The Federal Circuit has also enjoined prosecution of an earlier-filed patent infringement action against a customer in favor of a later-filed suit by a supplier/manufacturer without applying the four-part test. *See, e.g., Katz,* 909 F.2d at 1463–64; *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 179–80 (2d Cir. 1969). The "guiding principles" for enjoining an earlier-filed action in those cases are efficiency and judicial economy. *See Tegic Commc'ns Corp.,* 458 F.3d at 1343.

The "guiding principles" of efficiency and judicial economy strongly favor enjoining S3G while this Court decides patent ownership. Enjoining S3G is the only way to avoid potential duplication of effort, unnecessary expenditures, and inconsistent results on patent ownership by two different courts. *See, e.g., Venezia v. Union Cnty. Prosecutor's Office*, No. 10-6692 (MLC), 2011 WL 2148818, at *2 (D.N.J. May 31, 2011) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–19 (1976)). If S3G is enjoined, patent ownership will be decided only once by this Court. If not, the ITC will also address patent ownership. The ITC's subject matter jurisdiction turns on whether ATI owns the patents. "[I]nfringement actions may only be brought by, or in the name of, all of the owners of the patent in suit or the exclusive licensee of all of the rights covered by the patent." *SiRF Tech., Inc.,* 601

8

F.3d at 1326 n.4 (citing *In re Certain Catalyst Components & Catalysts for the Polymerization of Olefins*, Inv. No. 337-TA-307, 1990 ITC LEXIS 224, at \*10, \*26 (ITC June 25, 1990)). The ITC has not yet decided who owns the patents, but will be obligated to address ATI's patent ownership to determine whether it has subject matter jurisdiction unless S3G is enjoined. *Id.* at 1327–28. Because the ITC's findings are not binding, whoever does not prevail will inevitably seek to adjudicate patent ownership in this Court. The losing party also will likely occupy significant time and resources of other adjudicatory authorities like the Federal Circuit, which could be entirely unnecessary in light of this Court's ownership ruling. This potential for duplication of effort, unnecessary expenditures, and inconsistent results is avoided only if this Court enjoins S3G until this Court decides patent ownership. *See William Gluckin & Co.*, 407 F.2d at 179; *Venezia*, 2011 WL 2148818, at \*2.

> **B.** **AN INJUNCTION TO PRESERVE THE STATUS QUO PENDING ADJUDICATION OF PATENT OWNERSHIP IS ALSO APPROPRIATE UNDER THE TRADITIONAL FOUR FACTOR TEST.**

AMD/ATI is also entitled to injunctive relief under the traditional four-factor test. AMD/ATI is entitled to a temporary restraining order and preliminary injunction if it establishes: (1) a reasonable likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) a balance of hardships tipping in its favor; and (4) a favorable impact on the public interest. *Gen. Protecht Group*, 651 F.3d 1355; *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1200–01 (Fed. Cir. 2007). All of these factors strongly favor enjoining S3G.

> **1.** **AMD/ATI WILL PREVAIL ON THE MERITS.**

AMD/ATI is likely to prevail on the merits of its claim for declaratory relief because ATI owns the ATI Patents. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).

████████████████████████  ██████ █ █████████   Under Delaware law, a court is "constrained" to effectuate the parties' intent "by a combination of the parties' words and the plain meaning of those words." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006); *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996). Where the contract language is clear, "a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *Lorillard,* 903 A.2d at 739. ██████████



a.

███████████ The Assignment likewise sells, assigns, transfers, conveys and delivers to ATI "all of the right, title and interest … in and to the Acquired Assets, other than the Excluded Assets:"

> 1. Sale and Assignment of Assets and Properties. (a) On the terms and subject to the conditions of the Asset Purchase Agreement, the Seller hereby, on the Closing Date, sells, assigns, transfers, conveys and delivers to ATI and the Purchasers or has caused to be sold, assigned, transferred, conveyed and delivered to ATI and the Purchasers, and ATI and the Purchasers have purchased from the Seller, on the Closing Date, all of the right, title and interest as of the Closing Date of the Seller in and to the Acquired Assets, other than the Excluded Assets….

Ex. 9. "Where an agreement expressly identifies excluded assets, and then conveys 'all assets' except those so excluded, there is no room for a finding of ambiguity in its language." *Turner v. Officers, Dirs. & Emps. Of Mid Valley Bank*, 712 F. Supp. 1489, 1497 (E.D. Wash. 1988) (all assets includes intangible cause of action); *Phillips v. Hove*, No. 3644-VCL, 2011 WL 4404034, at *19 (Del. Ch. Sept. 22, 2011) ("[T]he phrase 'all of the assets' is not [ambiguous]. 'All' means 'all,' or if that is not clear, all, when used before a plural noun such as 'assets,' means '[t]he entire or unabated amount or quantity of; the whole extent, substance, or compass of; the whole.'"); *EMD Crop Bioscience Inc. v. Becker Underwood, Inc.*, 750 F. Supp. 2d 1004, 1013 (W.D. Wis. 2010) (agreement conveying "all . . . assets" is "not ambiguous").

**b.** ███████████████████████





██████████████████████████████████████

██████

████████████████████████████████████

███████████████████████████ Patent applications are personal property, and "35 U.S.C. § 261 makes clear that an application for patent as well as the patent itself may be assigned." *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991). According to PTO records, the '146 and '978 Patent applications were being prosecuted by SONICblue on ████████████[7] Exs. 1, 2, 17, 18.  By conveying the patent applications to ATI, SONICblue necessarily conveyed any patent that issued from those applications. *Filmtec*, 939 F.2d at 1572.

██████████████████████████████████████

█████████████ Each of these patents stems from the acquired '146 Patent application.  The '417 Patent issued from a continuation-in-part of the '146 Patent application.  Ex. 19, ID at 7; Ex. 3.  The '087 Patent followed from a continuation of the '417 Patent application.  Ex. 19, ID at 4;  Ex. 4. ████████████████████████

██████████████████████████████████████

██████████████████████████████ *Filmtec*, 939 F.2d at 1572; *EMD Crop Bioscience Inc.*, 750 F. Supp. 2d at 1013. ████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████

---

[7]      S3 Incorporated became SONICblue Incorporated in November 2000.  Exs. 5–8.  S3GC is not mentioned in the prosecution history records of these patents until May 2003.  Exs. 29, 30.

[8]      "Asset" includes anything of value, whether tangible or intangible.  *See, e.g.*, Black's Law Dictionary, 763 (9th ed. 2009).

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████         The term "use" is broadly defined, and includes any way that an

invention is put into practice. *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 10–11 (1913); *NTP, Inc. v.*

*Research in Motion, Ltd.*, 418 F.3d 1282, 1316–17 (Fed. Cir. 2005).  According to S3G, graphics

products that support S3TC texture compression and/or decompression practice the ATI Patents.

*See, e.g.,* Ex. 19, ID at 272–74. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ ███████       Attachments 7–21.  For example, a technical specification for the FireGL 3

graphics product lists "S3TC Texture Decompression" as a 3-D performance characteristic:



Ex. 23, ¶ 25 and  Attachment 19  (highlighting added). ████████████████████

████████████████████████████████████████████████████████ By

S3G's admission, the ATI Patents are practiced by the products included in the FireGL business. Thus, the ATI Patents were transferred to ATI.

### c.   S3G Has No Substantial Defense to Negate ATI's Ownership.

ATI's likely success is further established because S3G has no substantial defense to ATI's ownership evidence. *See, e.g., Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001).



*Concord Steel, Inc. v. Wilmington Steel Processing Co.,* No. 3369-VCP, 2008 WL 902406, at *9 (Del. Ch. Apr. 3, 2008) ("I interpret the phrase, 'including without limitation' to mean the enumerated components following that phrase are examples only."); *Cooper Distrib. Co. v. Amana Refrigeration, Inc.,*

63 F.3d 262, 280 (3d Cir. 1995); *Skycam, Inc. v. Bennett*, No. 09-CV-294-GKF-FHM, 2011 WL 3293015, at *7 (N.D. Okla. Aug. 1, 2011); (conveying intellectual property rights not included in a specific subparagraph or schedule). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *Id.* S3G's interpretation also contravenes Delaware law because it rewrites the ████████████████████████

████████████████████████████████████████ *Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663, 668–69 (D. Del. 2008) (citing 11 Williston on Contracts § 32:5 (4th ed.), a contract should not be read so as to render any terms or provisions meaningless). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ *Concord Steel*, 2008 WL 902406 at *9; *Cooper*, 63 F.3d at 280; *Skycam*, 2011 WL 3293015, at *7.

Nor can S3G refute ATI's ownership by claiming that it received an assignment of the ATI Patents from SONICblue in January 2001. First, S3G did not receive an assignment of the Asserted Patents in January 2001. Before the ITC, S3G relied on the patents listed in Schedule 3.14(a)(ii) attached to the August 2000 ARIA. Ex. 28, S3G Response at 5–10. The ARIA did not transfer any assets to S3GC because S3GC did not exist and the ARIA uses classic "will transfer" language, which does not effect a present assignment. Ex. 13, § 3.14(a); *Arachnid, Inc.*

---

9 ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

*v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir. 1991) (holding that "will be assigned" does not create "a present assignment of an expectant interest").

The documents that S3G recorded with the PTO in May 2002 ("May 2002 Documents") similarly do not reflect an assignment of the ATI Patents. The May 2002 Documents are not recorded in the PTO assignment records of any of the ATI Patents. These documents simply reflect what they state: an assignment of specific patents listed in "the attached Schedule A." Ex. 15, Reel 012852 Frame 0016. None of the ATI Patents, or even the pending patent applications that issued as ATI Patents, is listed on the attached Schedule A. That the ATI Patents were not assigned to S3G before the March 2001 transfer to ATI is further confirmed by the fact that S3G obtained an assignment of the ATI Patents in November 2006. S3G would have had no need to seek a November 2006 assignment of the ATI Patents if they had already been assigned to S3G years earlier.

The evidence demonstrates that SONICblue may have indicated in August 2000 that it was going to assign many patents and patent applications to the S3GC joint venture when it was formed. Ultimately, SONICblue only assigned the patents identified in Schedule A, which did not include any of the ATI Patents. S3G apparently then sought the assignment of additional SONICblue patents in 2006. This picture is confirmed by the terms of a Settlement Agreement that preceded the November 2006 assignment, which obligates SONICblue to "use its commercially reasonable best efforts to transfer" the "intellectual property related to or used in the Graphics Chip Business that currently remains in [SONICblue's] possession,…and *was to be contributed pursuant to the Amended and Restated Investment Agreement*." Ex. 32, § 5 (emphasis added); Ex. 33. But by that time, the ATI Patents had been transferred to ATI.

Second, any assignment to S3G █████████████████████ is void under 35

U.S.C. § 261.  Section 261 states, in pertinent part, "an assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage."  Before the ITC, S3G did not dispute that the three requirements of § 261 are met.  (1) ATI is a "subsequent purchaser ... for a valuable consideration" ███████████████████████████████████

█████████████████████████   ████████████████   (2) ATI is a purchaser "without notice" of any prior assignment to S3G.  ███████████████████████████████

████████████████████████████████████████████████   ██████

████████████████████████████████████████████████

████████████████████████   ATI plainly had no notice that these representations were false, and that ATI did not have the patent rights it needed to operate the FireGL Business because the patents had been previously assigned to S3GC.  (3) Finally, S3G admits that it did not record any assignment from SONICblue until May 2002, well after SONICblue's assignment to ATI and more than three months after any prior assignment to S3G in January 2001.

### 2.    AMD/ATI WILL BE IRREPARABLY HARMED IF S3G IS NOT ENJOINED.

The irreparable harm criteria for injunctive relief is met by showing that irreparable injury to AMD/ATI is likely "in the absence of preliminary relief."  *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 20 (2008).  AMD/ATI will be irreparably harmed if S3G is not enjoined in at least three ways.

First, S3G's interference with AMD/ATI's patent ownership rights clearly establishes irreparable injury.  Ex. 24, Skynner Decl., ¶ 9.  S3G is actively interfering with ATI's patent rights by enforcing the ATI Patents against ████████████████Apple.  *Id.*  S3G's attempts to enforce the ATI Patents interferes with ATI's right to license and to choose to enforce or not

enforce the ATI Patents. *See, e.g., Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995) ("[T]he patent owner may freely license others, or may tolerate infringers . . .")). "A party's active interference with a patent holder's right to license and practice a patent supports a finding of irreparable harm protected by equity and injunctive relief, as the 'attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified.'" *Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-00674-OWW-JLT, 2011 WL 1740420, at *11 (E.D. Cal. May 5, 2011) (quoting *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992)); *Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923-MMC, 2005 WL 3260684 (N.D. Cal. Dec. 1, 2005) (enjoining defendant from exercising patent ownership).

Second, AMD/ATI is likely to be irreparably harmed if S3G is not enjoined because it will suffer loss of goodwill, reputation and market position.[10] ███████████████ Monetary damages are inadequate to compensate for such injuries. *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011); *Purdue Pharma L.P.*, 237 F.3d at 1368; *Bio-Tech. Gen. Corp.*, 80 F.3d at 1566; *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 393–94 (E.D. Tex. 2009). ███████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███  ███  █████████████████████

███████████████████████████████

---

[10]    "Goodwill" includes a "business's reputation, patronage, and other intangible assets." *Black's Law Dictionary* 763 (9th ed. 2009).



Finally, AMD/ATI is also likely to suffer irreparable injury because it will be forced to litigate the issue of patent ownership on multiple fronts. *See Ciena Corp.*, 2005 WL 1189881, at *7 (irreparable harm where moving party forced to litigate in ITC and district court); *Gen. Protecht Group*, 651 F.3d 1355 (litigating on multiple fronts constitutes irreparable harm). As discussed in Part IV.A, AMD/ATI will be forced to litigate patent ownership in both the ITC Action and this Court unless S3G is enjoined.

### 3.   THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST CLEARLY FAVOR ENJOINING S3G.

The balance of hardships strongly favors enjoining S3G. As discussed in Part IV.B.2., AMD/ATI will suffer irreparable harm unless S3G is enjoined. By contrast, S3G will benefit from the injunction by avoiding the time and expense of litigating patent ownership in multiple forums.

Enjoining S3G is also in the public interest for at least three reasons. First, enjoining S3G will serve the public interest by ensuring that the ATI Patents are only being enforced by the actual patent owner. *See, e.g., Synopsys,* 2005 WL 3260684, at *5 (enjoining defendant from exercising ownership of patents until ownership dispute resolved). Public policy strongly favors ensuring that patent rights are enforced only by those who own all substantial rights in the

patents. *Isr. Bio-Engineering Project v. Amgen Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) (parties must have an ownership interest in the asserted patent to enforce right to exclude); *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (same). Indeed, courts routinely dismiss infringement actions brought by an entity who does not possess sufficient patent ownership rights. *See, e.g., Ortho Pharm. Corp.*, 52 F.3d at 1031–32; *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). Second, enjoining S3G is in the public interest because it will conserve judicial resources. *See* Part IV.A.; *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986) (recognizing the public's interest in conserving judicial resources); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010) (same). Third, the public interest favors an injunction because ATI is likely to prevail on ownership and will suffer irreparable injury if S3G is not enjoined. *See* Part IV.B.1.a.-b. "[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994).[11]

## V.   CONCLUSION

Based on the foregoing, AMD/ATI respectfully requests the Court enter an order enjoining S3G to take all necessary actions to secure dismissal of the ITC Action, including filing a motion to withdraw its complaint pending this Court's decision on patent ownership.

---

[11]    The Court should waive bond because S3G will not suffer any monetary loss if enjoined. *See Continental Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964) ("[T]he trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary."). If, however, a bond is necessary, $20,000 is more than sufficient to cover any minimal costs that S3G may incur from a delay of the ITC's final decision. *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir. 1954).

OF COUNSEL:

Jeffrey D. Mills
jmills@kslaw.com
R. William Beard, Jr.
wbeard@kslaw.com
Danielle Fitzpatrick
dfitzpatrick@kslaw.com
Amina S. Dammann
adammann@kslaw.com
Anna Brandl
abrandl@kslaw.com
King & Spalding LLP
401 Congress Avenue, Suite 3200
Austin, TX  78701
(512) 457-2000

Dated:  October 13, 2011

*Anne Shea Gaza*

Robert W. Whetzel (#2288)
whetzel@rlf.com
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Plaintiffs*
*Advanced Micro Devices, Inc., ATI*
*Technologies ULC and ATI International SRL*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2011, I caused to be served copies of the foregoing document in the manner indicated below and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following counsel of record:

**VIA E-MAIL**

Karen L. Pascale
Karen E. Keller
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
kpascale@ycst.com
kkeller@ycst.com

*Attorneys for Defendants*
*S3 Graphics Co., Ltd. and S3 Graphics, Inc.*

**VIA E-MAIL**

Thomas L. Jarvis
Scott R. Mosko
Thomas Winland
Don O. Burley
John Allison
Paul Goulet
Michael Kudravetz
James Hammond
Greg Storey
Steven M. Anzalone
Qingyu Yin
John M. Williamson
Finnegan, Henderson, Farabow, Garrett &
    Dunner, LLP
901 New York Avenue, NW
Washington, DC  20001
Tom.jarvis.finnegan.com
Scott.mosko@finnegan.com
Tom.winland@finnegan.com
Don.burley@finnegan.com
John.alison@finnegan.com
Paul.goulet@finnegan.com
Michael.kudravetz@finnegan.com
James.hammond@finnegan.com
Greg.storey@finnegan.com
Steven.anzalone@finnegan.com
Qingyu.yin@finnegan.com
John.williamson@finnegan.com

*Attorneys for Defendants*
*S3 Graphics Co., Ltd. and S3 Graphics, Inc.*

**VIA E-MAIL**

Dennis J. Connolly
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Dennis.connolly@alston.com

*Bankruptcy Trustee for
SONICblue Incorporated*

/s/ Elizabeth R. He
Elizabeth R. He (#5345)
he@rlf.com